**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO: 25-______** |
| **v.** | : | **DATE FILED: ________** |
| **JADA DIXON** | : | **VIOLATIONS:**<br>**18 U.S.C. § 1956(h) (conspiracy to launder monetary instruments – 1 count)**<br>**18 U.S.C. § 1956(a)(1)(B)(i) (money laundering – 4 counts)**<br>**18 U.S.C. § 1957 (money laundering – 1 count)**<br>**18 U.S.C. § 2 (aiding and abetting)**<br>**Notice of forfeiture** |

# INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

## BACKGROUND

At all times material to this indictment:

1. Defendant JADA DIXON was a resident of the Eastern District of Pennsylvania.

2. T&A Apparel Design LLC ("T&A Apparel") was a business registered in the Commonwealth of Pennsylvania.

3. Person 1 and Person 2 were residents of Philadelphia, Pennsylvania, who were involved in a wire fraud scheme and money laundering conspiracy where participants obtained funds through fraud and then Person 1 and Person 2 worked with a network of individuals whom they and others recruited to open bank accounts for sham businesses through which they laundered the proceeds of the fraud.

4. Citizens Bank, N.A. ("Citizens Bank") was a financial institution headquartered in Rhode Island and insured by the Federal Deposit Insurance Corporation ("FDIC") with certificate number 57957.

5. JPMorgan Chase Bank, N.A. ("JP Morgan Chase") was a financial institution headquartered in Ohio and insured by the FDIC with certificate number 628.

6. PNC Bank was a financial institution headquartered in Delaware and insured by the FDIC with certificate number 6384.

**Background on Economic Injury and Disaster Loans**

7. The United States Small Business Administration (the "SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy in a variety of ways, including by fostering the establishment and viability of small businesses and aiding in their economic recovery after community disasters.

8. COVID-19 cases were first diagnosed in the United States in early 2020, and by March 2020 the COVID-19 pandemic affected many aspects of daily living. Schools, workplaces, stores, and other gathering places were shut down and attendance was restricted. In addition to causing sickness and death, the pandemic had an immediate, negative impact on the American economy, especially on the country's many small businesses.

9. The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One way it did that was by making changes to facilitate SBA loans.

10. Starting before the COVID-19 pandemic, the SBA administered the Economic Injury Disaster Loan ("EIDL") program, which provided small businesses with working capital loans of up to $2 million to help overcome temporary loss of revenue as a result of a declared disaster. The CARES Act provided new rules that made it easier for small businesses that were economically damaged by the coronavirus pandemic to apply for and quickly receive loans. Small businesses with less than 500 employees were eligible to receive EIDLs. Due to the large volume of applications, the SBA initially capped loans to small businesses at $150,000.

11. To apply for an EIDL, small businesses had to provide information about their businesses, such as the number of employees, gross revenues, and cost of goods sold; state under penalty of perjury that they were eligible; and provide any information that the SBA determined to be necessary. EIDL applications were submitted online using the internet, and the SBA received them in a cloud-based platform.

12. If an EIDL was funded, EIDL disbursement payments were made electronically, initiated by the SBA Denver Finance Center in Denver, Colorado, then transmitted through the U.S. Treasury's Kansas City, Missouri, Financial Center, then transmitted through a Federal Reserve Bank, and then transmitted to the applicant's financial institution.

13. Among the frauds that were part of the scheme in which Person 1 was participating was a scam involving fraudulent EIDL applications. Scheme participants fraudulently applied for EIDLs and stole and laundered the EIDL loan funds. Sometimes the businesses in whose names the schemers applied for EIDLs were non-operational, sham businesses supposedly run by scheme participants. These businesses had no employees and did

no business, and were not in operation before January 31, 2020, and therefore were not eligible for an EIDL. The scheme participants lied on the EIDL applications, however, and claimed that the businesses had been in operation and had employees. Other times the businesses for which the schemers applied for EIDLs were real businesses with operations, but the schemers submitted the EIDL applications in the names of the true owners without the owners' knowledge or consent. The schemers provided false information about the number of employees, gross income, and cost of goods sold, and directed that the loan funds be paid to bank accounts over which scheme participants had control. The true owners of these businesses were unaware of the EIDL applications and received none of the loan proceeds.

**Background on Business Email Compromise**

14. A business email compromise ("BEC") scheme was a form of cyber-enabled financial fraud. In a typical BEC scheme, a malicious actor compromised legitimate business email accounts through computer intrusion techniques or social engineering and used the accounts to cause the unauthorized transfer of funds. Techniques for perpetrating these schemes included identity theft, spoofing of emails and websites, and the use of malware. Spoofing involved sending an email from an account that closely resembled but was slightly different from the email addresses of the legitimate parties to the transaction in an attempt to impersonate someone else and remain undetected.

15. Among the frauds that were part of the scheme in which Person 1 and Person 2 were tasked with laundering the proceeds was a BEC scheme where scheme participants sent spoofed emails to employees of victim-entities purporting to be from legitimate vendors or other business partners of the entities, directing them to transfer funds to specified bank accounts, which, unbeknownst to the entities' employees were controlled by participants in the

money laundering conspiracy. The entities' employees then unwittingly caused funds to be sent to the conspirators rather than the real vendors and other business partners.

**THE SCHEME**

16. From in or about June 2020 to in or about early 2021, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JADA DIXON**

conspired and agreed with Person 1 and Person 2 and others known and unknown to the grand jury conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which, in fact, involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**MANNER AND MEANS**

It was part of the conspiracy that:

17. Defendant JADA DIXON, Person 1, Person 2, and others known and unknown to the grand jury caused bank accounts to be opened in the names of multiple businesses so that they could be used to launder the proceeds of various fraud schemes, including EIDL fraud and BEC fraud.

18. Defendant JADA DIXON, Person 1, Person 2, and others known and unknown to the grand jury used these business bank accounts to launder fraud proceeds, that is, to conduct multiple financial transactions intended to disguise the nature and location of the

proceeds, conceal the true ownership and control of the proceeds, and disguise the source of the funds.

19. Person 2 provided defendant JADA DIXON with the names of pre-existing entities to use to open business bank accounts at Citizens Bank and JPMorgan Chase. Person 2 also provided defendant DIXON with fraudulent documents to use to open these accounts, which defendant DIXON used as instructed. These fraudulent documents falsely stated that defendant DIXON owned these entities.

20. Defendant JADA DIXON opened these bank accounts at Person 2's direction so that their conspirators could deposit and move large sums of fraudulently-obtained EIDL and BEC proceeds into the accounts and then Person 1, Person 2, and defendant DIXON could transfer most of the funds out of the accounts.

21. Person 1, Person 2, and defendant JADA DIXON agreed that, in exchange for helping Person 1 and Person 2 launder these fraud proceeds, defendant DIXON would be permitted to retain a portion of the fraud proceeds.

22. Defendant JADA DIXON, Person 1, and Person 2, and others known and unknown to the grand jury used these bank accounts to launder fraud proceeds, conceal the true ownership and control of the proceeds, and perform multiple financial transactions that would disguise the source of the funds.

23. On or about June 11, 2020, defendant JADA DIXON, with the assistance of Person 2, opened a business bank account ending in 2385 in the name of T&A Apparel at Citizens Bank, in Philadelphia, Pennsylvania. Defendant DIXON was the sole signatory for this account. After opening this account, defendant DIXON provided information regarding the bank account to Person 2.

24. Person 1, Person 2, and others acting in concert with them caused a fraudulent EIDL application to be submitted to the SBA and directed the proceeds of this application be deposited into the T&A Apparel account ending in 2385 at Citizens Bank controlled by defendant JADA DIXON.

25. As a result of this fraudulent application, on or about July 7, 2020, approximately $145,000 of fraudulent EIDL proceeds were deposited into defendant JADA DIXON's T&A Apparel account ending in 2385 at Citizens Bank.

26. After the proceeds of the fraudulent EIDL were deposited, Person 1, Person 2, and defendant JADA DIXON caused most of the proceeds to be transferred out of the T&A Apparel account ending in 2385 at Citizens Bank via official checks on the same day that they were deposited. Two of these checks were written to other companies that Person 2 controlled through nominees. One check, in the amount of approximately $20,010, was written to defendant DIXON.

27. On or about July 1, 2020, defendant JADA DIXON, with the assistance of Person 2, opened two business bank account (ending in 2568 and 9913) in the name of T&A Apparel at JPMorgan Chase, in Philadelphia, Pennsylvania. Defendant DIXON was the sole signatory for these accounts. After opening these accounts, defendant DIXON provided information regarding the bank accounts to Person 2.

28. Person 1, Person 2, and others acting in concert with them caused fraudulently-obtained BEC proceeds to be moved into the T&A Apparel account ending in 9913 at JPMorgan Chase controlled by defendant JADA DIXON.

29. After the fraudulently-obtained BEC proceeds were moved into the T&A Apparel account ending in 9913 at JPMorgan Chase controlled by defendant JADA DIXON,

defendant DIXON, Person 1, and Person 2 within a matter of days caused most of the proceeds to be transferred out of the account, including via cash withdrawals and a wire transfer to an overseas co-conspirator. Defendant DIXON also transferred approximately $6,500 to a personal Citizens Bank savings account held in her name.

30. On or about November 18, 2020, defendant JADA DIXON, with the assistance of Person 2, opened a business bank account ending in 5798 in the name of Altra Logistics LLC at JPMorgan Chase, in Philadelphia, Pennsylvania. Defendant DIXON was the sole signatory for this account. After opening this account, defendant DIXON provided information regarding the bank account to Person 2.

31. Person 1, Person 2, and others acting in concert with them caused fraudulently-obtained BEC proceeds to be moved into the Altra Logistics LLC account ending in 5798 at JPMorgan Chase controlled by defendant JADA DIXON.

32. In carrying out the conspiracy, defendant JADA DIXON, Person 1, and Person 2, and others known and unknown to the grand jury, laundered and attempted to launder over $500,000 in fraudulently-obtained funds.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWO THROUGH FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 15 and 17 through 32 of Count One are incorporated here.

2. On or about the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JADA DIXON**

knowingly conducted, and attempted to conduct, and aided, abetted, and willfully caused, the following financial transactions affecting interstate and foreign commerce, each transaction constituting a separate count:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| 2 | November 27, 2020 | A cash withdrawal of approximately $9,500 from the T&A Apparel JPMorgan Chase account ending in 9913 |
| 3 | November 27, 2020 | A cash withdrawal of approximately $9,000 from the T&A Apparel JPMorgan Chase account ending in 9913 |
| 4 | November 27, 2020 | A cash withdrawal of approximately $9,500 from the T&A Apparel JPMorgan Chase account ending in 9913 |
| 5 | November 27, 2020 | A cash withdrawal of approximately $51,940 from the T&A Apparel JPMorgan Chase account ending in 9913 |

3. When conducting, aiding, abetting, and willfully causing the financial transactions described in paragraph 2 above, defendant JADA DIXON knew that the property involved in those financial transactions represented the proceeds of some form of unlawful activity.

4. The financial transactions described in paragraph 2 above involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and defendant JADA DIXON acted with the knowledge that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

**COUNT SIX**

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 15, 17 through 22, and 27 through 29 of Count One are incorporated here.

2. On or about November 27, 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JADA DIXON**

knowingly engaged in, and attempted to engage in, a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, that is, a cash withdrawal of approximately $51,940 from T&A Apparel's JPMorgan Chase account ending in 9913, and such property was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 1956 and 1957, set forth in this indictment, defendant

**JADA DIXON**

shall forfeit to the United States of America any property, real or personal, involved in the violations of Title 18, United States Code, Sections 1956 and 1957, and any property traceable to such property, including, but not limited to, the sum of approximately $552,982.36

2. If any property described above, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18 United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1).

**A TRUE BILL:**

[redacted]

**GRAND JURY FOR[redacted]ON**

Christine E Sykes for

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*__________

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

JADA DIXON

INDICTMENT

Counts
18 U.S.C. § 1956(h) (conspiracy to launder monetary instruments – 1 count)
18 U.S.C. § 1956(a)(1)(B)(i) (money laundering – 4 counts)
18 U.S.C. § 1957 (money laundering – 1 count)
18 U.S.C. § 2 (aiding and abetting)
Notice of forfeiture

[redacted] _____day,

Bail, $__________________