**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-489** |
| **JADA DIXON** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Jada Dixon laundered hundreds of thousands of dollars of fraud proceeds via bank accounts opened in the names of her fake businesses, which helped her coconspirators hide the fruits of their deception and theft of numerous victims. She did all of this on the promise and delivery of a quick buck – money that was not hers and to which she was not entitled. She had no legitimate businesses and no legitimate reason to receive or expect to receive these dirty funds. Perhaps most importantly, Dixon's participation was essential to the conspiracy; the scheme simply could not have succeeded to the extent that it did without her willingness, and the willingness of others like her, to move the money around in order to conceal its unlawful source, its location, and the identity of the person who was directing its movement. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 30-37 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors**.**

## I. **BACKGROUND**

On November 13, 2025, a federal grand jury returned a six-count indictment charging defendant Jada Dixon with conspiracy to launder monetary instruments, in violation of 18 U.S.C.

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

§ 1956(h) (Count One), four counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Two through Five), and one count of transactional money laundering, in violation of 18 U.S.C. § 1957 (Count Six). On April 22, 2026, the defendant pled guilty pursuant to a guilty plea agreement, and admitted that she participated with others in a conspiracy to receive ill-gotten proceeds that were sourced from a fraudulent EIDL loan and multiple business email compromises that victimized local governments, to receive them into bank accounts in her control and in the names of companies in her name (which in reality did not actually exist), and to further transfer those funds to other conspirators. In return for her participation, the defendant was permitted to retain a portion of those funds, approximately $35,000.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

For Count One, charging conspiracy to launder monetary instruments, a term of imprisonment of 20 years, a term of supervised release of three years, a fine of $500,000 or twice the amount of the laundered funds ($1,036,264.72) whichever is greater, and a special assessment of $100. For each of Counts Two through Five, charging money laundering, a term of imprisonment of 20 years, a term of supervised release of three years, a fine of $500,000 and a special assessment of $100. For Count Six, charging transactional money laundering, a term of imprisonment of 10 years, a term of supervised release of three years, a fine of $250,000 and a special assessment of $100.

In total, the defendant faces a maximum punishment of 110 years of imprisonment, three years of supervised release, a $3,286,264.72 fine, and a $600 special assessment.

**B. Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range in the final Presentence Report as follows:

| | |
|---|---|
| Base offense level (§ 2S1.1, § 2B1.1(b)(1)(G)): | 20 |
| Convicted under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)): | +2 |
| Sophisticated laundering (§ 2S1.1(b)(3)): | +2 |
| Zero-point offender (§ 4C1.1): | -2 |
| Acceptance of responsibility (§ 3E1.1): | -3 |
| **Total offense level:** | **19** |

The defendant has not objected to the calculation set forth above. The defendant has a criminal history score of zero. Accordingly, the Guidelines range is 30 to 37 months of imprisonment.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment.**

Some decisions should have serious consequences no matter how otherwise law abiding a person may have been up to the point of their infraction. Here, the defendant engaged in a serious and continued money laundering offense that allowed her coconspirators to hide large amounts of money they stole from their multiple victims. Defendant Dixon opened up bank accounts in the names of sham businesses that served no purpose except to receive fraudulent proceeds and then pass that dirty money on to her coconspirators. The motive was personal enrichment, plain and simple.

The nature of the prolific cyber fraud schemes that increasingly plague our constituency is that they must rely heavily on “money mules” to hide and transfer their criminal proceeds. Without money mules like Dixon these schemes would fall apart, given that the masterminds are typically located overseas or are otherwise unable to facilitate the day-to-day laundering without the help of U.S. citizens. Although these “money mules” often have little or no criminal history and may live otherwise law-abiding lives, they play an absolutely essential role in the large-scale fleecing of domestic businesses and taxpayers. The seriousness of Dixon’s conduct is best measured by the broad scope of the fraudulent scheme she helped to facilitate, not by the

relatively modest amount of money she was paid for her role (approximately $35,000). Put another way, she was all too eager to make a quick dollar at the expense of others. The government believes that combating this all-too-common mindset requires the courts to treat these crimes seriously and to send a message to the general public that those who commit them will go to jail.

Money launders like Dixon contribute to the on-going epidemic of cyber fraud and business email compromise schemes. This affects not just the federal government or multiple municipal governments who were duped into wiring money to other coconspirators that Dixon ultimately laundered through her accounts, it affects all taxpayers. Here, the money received by this defendant was money held by multiple government entities for the benefit of taxpayers. Those like Dixon who criminally profit from the theft of money we all contribute to the government fisc should face serious consequences, which in this circumstance is a sentence of imprisonment within the final Guideline range of 30-37 months. The Guideline's recommended term of imprisonment is required here "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).

The defendant has not set forth any persuasive argument for leniency. While she attempts to carve her culpability out from the actions of her co-conspirators,[2] it cannot be ignored that her role was critical to the success of the operation – she served as a critical link in the laundering chain and she was compensated for it. There are several reasons why the sentence of probation requested by the defendant is not warranted merely because she must pay some restitution, now

[2] "It is important however to recognize what this case does not involve. Ms. Dixon did not devise the scheme. She did not compromise a single email account, submit a single fraudulent loan application, or identify a single victim. Her role was to hold accounts in her own name so that others could move what they have already stolen . . ." *Def. Sent. Memo* at 7.

has felony convictions on her record, and otherwise lacks criminal history. First, the defendant's lack of criminal history is already accounted for in her guideline calculation, which applies a two-level downward decrease from the base offense level. PSR ¶ 33. Second, the defendant herself admits that her restitution amount and forfeiture order are "deserved." *Def. Sent. Memo*. at 12. Third, a non-incarceration sentence in this case would run the risk of sending the message that a person can commit serious white-collar offenses and not face imprisonment; rather, the message would seem to be that paying restitution or forfeiture is a substitute for serving an actual term of confinement. And perhaps most importantly, and as argued above, a sentence of imprisonment would accomplish the goal of general deterrence by sending a message to other would-be money mules that facilitating financial frauds like this one will lead to a meaningful deprivation of their personal freedom.

A sentence of imprisonment would also be consistent with sentences imposed in similar cases across the country. According to the United States Sentencing Commission's Judiciary Sentencing Information Dashboard, from fiscal year 2021 through 2025, there were 164 defendants whose final Guideline range was calculated under USSG § 2S1.1, with a Criminal History category of I, and a final Offense Level of 19.[3] This data shows that 140 of the 164 individuals in that profile received a sentence of imprisonment in whole or in part, with an average length of 22 months' imprisonment. This means that approximately 85% of similarly situated defendants in the last five years received a sentence of imprisonment in whole or in part. A sentence of imprisonment is warranted here to avoid disparity with other similarly situated defendants.[4]

---

[3] This number excludes those defendants who received USSG § 5K1.1 departures.

[4] The government acknowledges that Dixon's criminal conduct and remuneration were similar to other money mule defendants that have appeared before this Court for sentencing in these related matters, and that the interest of

The defendant also asserts that her responsibility to care for her family calls for a reduced sentence. While this Court has authority to consider family circumstances as a basis for a reduced sentence, the present facts do not warrant such leniency. Unfortunately, inconvenience and even harm to a criminal defendant's family are the unavoidable byproducts of a criminal act, and ordinarily do not warrant leniency. The Commission's judgment is sound. Such leniency should not be afforded here, given the severity of the defendant's offenses.

Finally, there is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. <u>Supervised Release</u>.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of

---

avoiding a disparity among these coconspirators is an important factor that the Court must weigh in imposing Dixon's sentence.

supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of three years is warranted. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a significant sentence that

fully accounts for the scope and severity of the defendant's criminal conduct – in this case a Guideline sentence, is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

S. CHANDLER HARRIS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Margaret M. Grasso, Esq.
Counsel for Jada Dixon

S. CHANDLER HARRIS
Assistant United States Attorney

DATED: September 24, 2026.